ACCEPTED
04-15-00287-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
12/24/2015 9:31:29 PM
KEITH HOTTLE
CLERK

## NO. 04-15-00287-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
12/28/2015 11:56:00 AM
KEITH E. HOTTLE
Clerk

# IN THE FOURTH COURT OF APPEALS

_____

Cecil Adams and Maxine Adams

*Appellants*,

vs.

Harris County, Rebecca Ross, Kathleen Keese, Christopher Prine Clerk of the Court and Chris Daniel District Clerk

*Appellees*

On Appeal from 269th Judicial Court

Houston, Texas

Cause No. 2014-35653

Transferred by Order of the Supreme Court from the First Court of Appeals

Houston, Texas

Cause No. 01-15-00384-CV

# Adams' En Banc Motion for Reconsideration

_____

Cecil Adams

Maxine Adams

5510 S. Rice #1206

Houston, Texas 77081

p.713.840.0330

Email:  cecillovesmax@sbcglobal.net

NOW HERE COMES Maxine Adams and Cecil Adams (collectively the "Adams") to file this En Banc Motion for Reconsideration and would show as follows:

BACKGROUND FACTS

The Adams adopts the background facts in the December 9, 2015 Memorandum Opinion and Judgment issued by this Honorable Court [Appendix 1]. This is a case in which the trial court granted governmental officials claim of sovereign and judicial immunity in a plea to jurisdiction. The appellate judgment in the above captioned appeal taxed the costs of the appeal against Adams. The Opinion affirmed the trial court order granting the plea to the jurisdiction filed by Christopher A. Prine in his official capacity and dismissed Adams' challenge of the order granting the plea to the jurisdiction in Christopher A. Prine's individual capacity for lack of jurisdiction because:

> "The trial court's ruling on the plea was not one that "grante[ed] or denie[d] a plea to the jurisdiction by a governmental official and the Adamses' interlocutory appeal is not authorized by section 51.014(a)(8). See *Sanders v. City of Grapevine*, 218 S.W.3d 772, 776 (Tex. App.—Fort Worth 2007, pet denied.)(holding a trial court's order granting plea to jurisdiction and dismissing claims against city officials in their individual capacities was not an appealable interlocutory order under section 51.014(a)(8).[1]" [APPENDIX ("APP") 1: page 7].

---

[1] APP. 2: *James v. Underwood*, 438 SW 3d 704 - Tex: Court of Appeals 2014 [1st District: No 01-13-00277-CV] (full text) addresses a recent case where a governmental official claimed sovereign and judicial immunity. ("The judges' motion to dismiss alleged both judicial immunity and sovereign immunity. The order granting dismissal did not specify the basis for dismissal. If dismissal was proper under either theory, the trial court's judgment will be affirmed. *See Guar. Cnty. Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986); *In re Estate of Hutchins,* 391 S.W.3d 578, 585 (Tex. App.-Dallas 2012, no pet.) Because we conclude that dismissal based on judicial immunity was proper, we do not reach the issue of sovereign immunity.")

## QUESTIONS OF LAW

Does TEX. CIV. PRAC & REM. CODE 51.015 permit the taxation of cost in an interlocutory appeal filed under TEX. CIV. PRAC. & REM. CODE 51.014(a)(8)?

Does TEX. CIV. PRAC. & REM. CODE 51.014(a)(8) grant an appellate court authority to review both immunity claims when a governmental official claims official and individual immunity?

## GROUNDS FOR RECONSIDERATION

The Adams respectfully requests the Court to reconsider (1) the Judgment taxing costs of court in an interlocutory appeal filed under TEX. CIV. PRAC. & REM. CODE ("CODE") 51.014(a)(8). 51.015[2] does not permit awarding of cost in an appeal filed under CODE 51.014(a)(8). No party in this appeal has a statutory right to attorney fees. A Motion to Correct Judgment is also pending before this Court.

(2) The Texas Supreme Court affirms that CODE 51.014(a)(8) requires complete resolution all jurisdictional pleas, holding that "a plea to the jurisdiction challenges the court's authority to decide a case." "When assessing a plea to the jurisdiction, our analysis begins with the live pleading." "…[W]e must consider such

---

[2] See CODE Sec. 51.015." In the case of an appeal brought pursuant to Section 51.014(6), if the order appealed from is affirmed, the court of appeals shall order the appellant to pay all costs and reasonable attorney fees of the appeal; otherwise, each party shall be liable for and taxed its own costs of the appeal.

evidence when necessary to resolve the jurisdictional issue", "[w]e must grant the plea to the jurisdiction if the plaintiff's pleadings affirmatively negate the existence of jurisdiction, "[a]nd we must grant the plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction." *Heckman v. Williamson County, 369 SW 3d 150 - Tex: Supreme Court 2012 (citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 553-54 (Tex.2000), Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226-227 (Tex.2004). The issue of immunity evokes subject matter jurisdiction of the trial court. Subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 379 (Tex. 2006) (Brister, J., concurring) (citing *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 358 (Tex.2004)); *see also Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 850 (Tex.2000).

"The inquiry is not whether section 51.014(a) *grants* appellate courts authority to review an immunity claim; rather, it is whether section 51.014(a) *divests* appellate courts of such authority. We conclude that it does not." *Rusk State Hospital v. Black*, 392 SW 3d 88 - Tex: Supreme Court 2012   This Court has jurisdiction to review the plea to the jurisdiction de novo, the trial court granted both of Christopher A. Prines jurisdictional pleas in a single order and the Adams were granted an appeal under CODE 51.014(a)(8).

(3) As the Court obtained jurisdiction to address the issue of sovereign immunity, Tex. R. App. P. 29.6 affords this Court jurisdiction over the interlocutory issue with respect to individual immunity as it impairs the effectiveness of the relief sought on appeal, the sole purpose of a plea to jurisdiction is to determine whether the trial court has authority to act. The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d at 226 (Tex.2004).

The main purpose of the interlocutory appeal statute is to increase efficiency of the judicial process. *Rusk State Hospital v. Black*, 392 SW 3d 88 - Tex: Supreme Court 2012 *(citing Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 845 (Tex. 2007). The ruling as it stands (1) severs Christopher A. Prine's immunity claims into two immunity rulings without resolving whether the question of law as to whether the trial court has jurisdiction over claims in his individual capacity, (2) would require Adams to wait until a final judgment issues for the interlocutory jurisdictional order to be determined.

## REQUEST FOR RELIEF

Adams requests the following relief: (1) removal of taxation of costs in accordance with TEX. CIV. PRAC. & REM. CODE 51.015 (2) Render a judgment

- 4 -

that either affirms or reverses the trial court order granting Christopher A. Prine's plea to jurisdiction in his individual capacity to resolve the issue of jurisdiction.

Dated: December 24, 2015

Respectfully submitted,

Respectfully submitted,
/s/: Cecil Adams
Cecil Adams
5510 S. Rice #1206
Houston, Texas 77081
713.840.0330
cecillovesmax@sbcglobal.net
*Pro Se*

Respectfully submitted,
/s/: Maxine Adams
Maxine Adams
5510 S. Rice #1206
Houston, Texas 77081
713.840.0330
cecillovesmax@sbcglobal.net
*Pro Se*

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Appellate Procedure 9.2(c)(1), I certify that a copy of this Motion was served on the following parties by e-service through a government approved electronic filing system via email on December 24, 2015.


Vince Ryan, Esq.
Harris County Attorney
vince.ryan@cao.hctx.net

Clinton Gambil Senior
Assistant County Attorney
clinton.gambill@cao.hctx.net

Brian A. Quintero
Esq. Senior Assistant County Attorney
brian.quintero@cao.hctx.net
1019 Congress, 15th Floor
Houston, Texas 77002
p. 713.274.5173 f. 713.437.8633
**ATTORNEYS FOR CHRIS DANIEL AHARRIS COUNTY**

Timothy J. Henderson
6300 West Loop South, Suite 280
Bellaire, Texas 77401
timhenderson@msn.com
p. 713.667.7878   f. 713.668.5697
**COUNSEL FOR REBECCA ROSS**

Jayson Booth, Esq.
3730 Kirby Drive, Suite 777
Houston, Texas 77098
jbooth@boothricheylaw.com
713.333.0377 713.526.1175 (fax)
**COUNSEL FOR KATHLEEN KEESE**

Christian Cobe Vasquez
Assistant Attorney General
P.O. Box 12548, Capitol Station Austin,
Texas 78711
christin.cobe@texasattorneygeneral.gov
p. (512) 463-2080 f. (512) 495-9139 (fax)
**COUNSEL FOR CHRISTOPHER PRINE**

/s/: Maxine Adams
Maxine Adams

/s/: Cecil Adams
Cecil Adams

## APPENDIX

APPENDIX 1 [OPINION AND JUDGMENT]…………………………………8


APPENDIX 2 [*James v. Underwood*, 438 SW 3d 704 - Tex: Court of Appeals 2014 [1st District: No 01-13-00277-CV]…………………………………………….9

APPENDIX 1

OPINION AND JUDGMENT



# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00287-CV

Cecil **ADAMS** and Maxine Adams,
Appellants

v.

**HARRIS COUNTY** and Christopher A. Prine, Clerk of the First Court of Appeals
Appellees

From the 269th Judicial District Court, Harris County, Texas
Trial Court No. 2014-35653
Honorable Dan Hinde, Judge Presiding

Opinion by:      Luz Elena D. Chapa, Justice

Sitting:          Karen Angelini, Justice
                  Rebeca C. Martinez, Justice
                  Luz Elena D. Chapa, Justice

Delivered and Filed:  December 9, 2015

AFFIRMED IN PART AND DISMISSED FOR LACK OF JURISDICTION IN PART

Maxine and Cecil Adams filed this interlocutory appeal, complaining of the trial court's orders denying their motion to dismiss Harris County's interpleader action and granting Christopher A. Prine's plea to the jurisdiction. We affirm the trial court's order dismissing the Adamses' claims against Christopher A. Prine in his official capacity as Clerk of the First Court of Appeals. We dismiss the rest of the appeal for lack of jurisdiction.

**BACKGROUND**

This litigation arose as a result of a landlord-tenant dispute between the Adamses and Rebecca Ross. A lawsuit between them in the 269th Judicial District Court of Harris County, Texas, resulted in a judgment in favor of the Adamses. The Adamses recovered part of the judgment through a writ of garnishment, and Ross deposited the balance due on the judgment into the registry of the court. The Adamses appealed the judgment to the First Court of Appeals, and in August 2013, the court of appeals dismissed the appeal for want of prosecution. *Adams v. Ross*, No. 01-11-00552-CV, 2013 WL 4003757 (Tex. App.—Houston [1st Dist.] Aug. 2, 2013, pet. denied) (per curiam, mem. op.). The judgment assessed all of the costs of the appeal against Maxine Adams and ordered the Clerk of the Court to issue a statement of costs with the mandate. The court of appeals' mandate issued April 4, 2014. The same day, Christopher A. Prine, Clerk of the First Court of Appeals, prepared and issued a bill of costs in Appeal No. 01-11-00552-CV. The bill of costs indicated that a number of items, including fees for preparing parts of the appellate record, remained unpaid or that the status of payment was unknown.

In June 2014, Harris County filed a petition in interpleader in the district court, alleging that the Harris County District Clerk is custodian of the funds Rebecca Ross previously deposited into the registry of the court. The petition alleged competing claims to the funds had been made by the Adamses, Ross, the Harris County District Clerk, the court reporter, and Prine, as Clerk of the First Court of Appeals. Prine disclaimed any interest in the interpleaded funds, and Harris County nonsuited him from the interpleader action. The Adamses subsequently filed a motion to dismiss the interpleader action, which the trial court denied by an order signed March 13, 2015.

The Adamses also filed counter and cross claims against several parties, including an action under 42 U.S.C. § 1983 against Prine. The Adamses' live pleading alleges that in the bill of costs, Prine "systematically over billed for each appellate record filed in the Court of Appeals, and

charged fees for appellate records that the Harris County [sic] documented as no amount due" and that Prine and the Harris County District Clerk "falsified court records individually or collectively to deprive Adams of property without due process." The Adamses assert that "Christopher Pine [sic] acting in his individual capacity as the Clerk of the 1st Court of Appeals in performing ministerial billing responsibilities" proximately caused them to be deprived of property without due process of law, in violation of their rights under the Fourteenth Amendment. The Adamses sought damages "from Christopher Prine individually for falsified billing entries resulting in costs not associated with [the] appeal and punitive damages."

Prine filed a plea to the jurisdiction based on the pleadings, asserting he has sovereign and quasi-judicial immunity from the Adamses' suit and from liability for the damages claimed. The trial court granted Prine's plea and signed an order dismissing the Adamses' claims against Prine with prejudice. This appeal followed.

### DENIAL OF MOTION TO DISMISS INTERPLEADER ACTION

The Adamses moved to dismiss Harris County's interpleader suit on the ground that the County had failed to allege or present evidence on one or more of the elements of an interpleader action. The trial court denied the motion. This court does not have jurisdiction to consider immediate appeals of interlocutory orders unless a statute explicitly provides such jurisdiction. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).[1] The Adamses' notice of appeal asserts that an interlocutory appeal of this order is authorized by Texas Rule of Appellate Procedure 29.6. Rule 29.6 provides that while an appeal from an interlocutory order is pending, the appellate court may review:

(1) a further appealable interlocutory order concerning the same subject matter; and

---

[1] We must inquire into our jurisdiction to consider an appeal even if the parties have not challenged appellate jurisdiction. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam).

> (2) any interlocutory order that interferes with or impairs the effectiveness of the relief sought or that may be granted on appeal.

TEX. R. APP. P. 29.6. An order denying a motion to dismiss an interpleader petition is not immediately appealable. *See Law Office of Henry Gates Steen Jr., P.C. v. Eagle Pass Indep. Sch. Dist.*, 293 S.W.3d 792, 794 (Tex. App.—San Antonio 2009, no. pet.) (holding order allowing interpleader action to go forward is an unappealable interlocutory order). Because the order is not appealable, Rule 29.6(1) does not apply. In order for Rule 29.6(2) to apply, the Adamses must establish that the trial court's order interferes with or impairs the effectiveness of any relief that may be granted in this appeal. The Adamses' brief does not contain any argument or authority directed to this order — either on the merits of the order or in support of our exercising jurisdiction over the order. We conclude we lack jurisdiction to review the order. Therefore we dismiss for lack of jurisdiction the Adamses' appeal of the trial court's order denying their motion to dismiss Harris County's interpleader action.

## PLEA TO THE JURISDICTION

Prine's plea to the jurisdiction asserted grounds for dismissing both official capacity and individual capacity claims against him. The trial court's order sustained the plea in its entirety and dismissed all of the Adamses' claims against Prine with prejudice.[2] This court generally has jurisdiction to hear appeals only from final judgments. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992). The trial court's order dismissing the Adamses' claims with prejudice is not final because other claims and parties remain pending in the trial court. We have jurisdiction to review the trial court's interlocutory orders only if expressly authorized by statute. *Koseoglu*, 233 S.W.3d at 840.

---

[2] The parties dispute whether the Adamses' pleading asserted both individual and official capacity claims against Prine. For purposes of this appeal, we construe the Adamses' pleading broadly and assume that official capacity claims as well as individual capacity claims were pleaded.

The Adamses contend that section 51.014(a)(8) of the Texas Civil Practice and Remedies Code authorizes us to exercise jurisdiction over the trial court's interlocutory dismissal order. That section provides:

> A person may appeal from an interlocutory order of a district court . . . that . . . grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001.

TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2015).[3] "We strictly construe Section 51.014(a) as 'a narrow exception to the general rule that only final judgments are appealable.'" *Koseoglu*, 233 S.W.3d at 841 (quoting *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001)).

**Official Capacity Claims**

Under Texas law, a suit against a government employee in his official capacity is usually a suit against his government employer. *Franka v. Velasquez*, 332 S.W.3d 367, 382-83 (Tex. 2011). A state official sued in his official capacity may invoke the sovereign immunity from suit held by the governmental unit itself because the suit is not one against the official personally; the real party in interest is the governmental unit. *Koseoglu*, 233 S.W.3d at 844 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). A state official sued in his official capacity therefore may challenge the trial court's jurisdiction on the grounds of sovereign immunity by filing a plea to the jurisdiction, and the trial court's ruling on the plea is within the scope of section 51.014(a)(8). *Id.* at 843.

---

[3] The definition of "governmental unit" in section 101.001 of the Texas Civil Practice and Remedies Code includes:

> *this state and all the several agencies of government that collectively constitute the government of this state, including* other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and *courts*;

TEX. CIV. PRAC. & REM. CODE ANN. 101.001(3)(A) (West Supp. 2015) (emphasis added).

Prine is an officer or employee of the First Court of Appeals, which is an agency of the State of Texas and a "governmental unit" within the meaning of section 101.001(3)(A) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(A). A suit against Prine in his official capacity as the Clerk of the First Court of Appeals is effectively against the governmental unit, and Prine may assert the governmental unit's immunities from suit in a plea to the jurisdiction. *See Koseoglu*, 233 S.W.3d at 843. The court's order granting the plea filed by Prine in his official capacity is appealable under section 51.014(a)(8). *See id.*

Prine's plea to the jurisdiction argued that a section 1983 suit against Prine in his official capacity is barred by sovereign immunity and by the Eleventh Amendment. We agree. The Eleventh Amendment to the United States Constitution bars a suit against the State in state court unless the State waives its immunity or Congress abrogates it. *Alden v. Maine*, 527 U.S. 706, 754 (1999); *Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 195 (Tex. 2010). In enacting 42 U.S.C. § 1983, Congress did not abrogate the states' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 337–45 (1979); *see also Hafer v. Melo*, 502 U.S. 21, 25, 27 (1991) (holding suits against state officials in their official capacity are suits against the State, and section 1983 does not authorize suits against them). We therefore hold the trial court did not err in sustaining the plea to the jurisdiction filed by Prine in his official capacity and affirm the order dismissing the Adamses' claims against Prine in his official capacity.

**Individual Capacity Claims**

The Adamses also challenge the trial court's order dismissing their section 1983 claims against Prine in his individual capacity for actions he took under the authority of his office. Prine's plea to the jurisdiction asserted the defense of quasi-judicial immunity to the individual-capacity section 1983 claims.

A section 1983 claim against a governmental official or employee in his individual capacity for actions taken under the authority of his office seeks to impose personal monetary liability on the officer or employee. *See Hafer*, 502 U.S. at 25. It is not a claim against a governmental unit, and a person sued only in his individual capacity may not assert the governmental unit's sovereign immunity. *City of Leon Valley v. Wm. Rancher Estates Joint Venture*, No. 04-14-00542-CV, 2015 WL 2405475, at *2 (Tex. App. May 20, 2015, no pet.); *see Harrison v. Tex. Dep't of Criminal Justice–Institutional Div.*, 915 S.W.2d 882, 887-89 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (sovereign immunity does not bar a section 1983 suit against individual state officials in their individual capacities, even if they were acting in their official capacities when they took the actions complained of). A governmental official or employee sued in his individual capacity may assert quasi-judicial immunity as an affirmative defense; however, it is a personal defense, not one asserted by a governmental unit or by a state employee sued in his official capacity. *See Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000).

The plea to the jurisdiction filed by Prine in his individual capacity was based on his claim of quasi-judicial immunity, a personal defense that is not based on the governmental unit's immunity. Therefore, the trial court's ruling on the plea was not one that "grant[ed] or denie[d] a plea to the jurisdiction by a governmental unit," and the Adamses' interlocutory appeal is not authorized by section 51.014(a)(8). *See Sanders v. City of Grapevine*, 218 S.W.3d 772, 776 (Tex. App.—Fort Worth 2007, pet. denied) (holding trial court's order granting plea to jurisdiction and dismissing with prejudice claims against city officials in their individual capacities was not an appealable interlocutory order under section 51.014(a)(8)). We therefore dismiss this part of the appeal for lack of jurisdiction.

## CONCLUSION

The trial court's order dismissing with prejudice Maxine and Cecil Adamses' claims against Christopher A. Prine in his official capacity as the Clerk of the First Court of Appeals is affirmed.  The Adamses' appeal of the trial court's orders (1) denying their motion to dismiss Harris County's interpleader petition and (2) granting the plea to the jurisdiction filed by Christopher Prine in his individual capacity and dismissing the individual capacity claims against him are dismissed for lack of jurisdiction.

Luz Elena D. Chapa, Justice



# Fourth Court of Appeals
## San Antonio, Texas

## JUDGMENT

No. 04-15-00287-CV

Cecil **ADAMS** and Maxine Adams,
Appellants

v.

**HARRIS COUNTY** and Christopher A. Prine, Clerk of the First Court of Appeals
Appellees

From the 269th Judicial District Court, Harris County, Texas
Trial Court No. 2014-35653
Honorable Dan Hinde, Judge Presiding

BEFORE JUSTICE ANGELINI, JUSTICE MARTINEZ, AND JUSTICE CHAPA

In accordance with this court's opinion of this date, the trial court's order dismissing with prejudice Maxine and Cecil Adamses' claims against Christopher A. Prine in his official capacity as the Clerk of the First Court of Appeals is AFFIRMED. The appeals of the trial court's orders denying Maxine and Cecil Adamses' motion to dismiss Harris County's interpleader petition and granting the plea to the jurisdiction filed by Christopher Prine in his individual capacity are DISMISSED FOR LACK OF JURISDICTION.

We ORDER that Harris County and Christopher A. Prine, Clerk of the First Court of Appeals, recover their costs of this appeal from appellants Cecil Adams and Maxine Adams.

SIGNED December 9, 2015.

_Luz Elena D. Chapa_
Luz Elena D. Chapa, Justice

APPENDIX 2:

*James v. Underwood*, 438 SW 3d 704 - Tex: Court of Appeals 2014 [1st District: No 01-13-00277-CV]

**438 S.W.3d 704 (2014)**

**Carolyn Calkins JAMES, Individually and as Next Friend of her Elderly Mother, Mary Olive Calkins, Appellant**

v.

**Honorable Olen UNDERWOOD, Honorable Patrick Sebesta and Fidelity And Deposit Company of Maryland, Richard Stephen Calkins as Agent in Fact for Mary Olive Calkins and Michael Easton, Individually and as Assignee of Richard Stephen Calkins, Appellees.**

No. 01-13-00277-CV.

**Court of Appeals of Texas, Houston (1st Dist.).**

May 8, 2014.
Rehearing Overruled July 17, 2014.

706*706 Kenneth A. Zimmern, Zimmern Law Firm, P.C., G. Wesley Uroquhart, P.C., Houston, TX, for Appellant.

Duncan L. Clore, Christine D. Roseveare, Strasburger & Price, L.L.P., Dallas, TX, David A. Harris, Assistant Attorney General, Austin, TX, Susan C. Norman, Houston, TX, Michael Easton, Richmond, TX, for Appellees.

Panel consists of Justices KEYES, BLAND, and BROWN.

**OPINION**

PER CURIAM.

Carolyn James and her brother Richard Steven Calkins are in a legal dispute over who has the right to manage the assets of 707*707 their mother, Mary Calkins. Their controversy has spawned multiple lawsuits filed in various district and probate courts in at least two counties resulting in no less than 11 issued appellate decisions — thus far — from the First and Fourteenth Courts of Appeals.[1] Michael Easton,

an individual who is not related to James or Calkins, has repeatedly intervened, sued and been sued in the dispute between the siblings.[2]

In this latest iteration, James sued two judges who have presided over aspects of her on-going legal dispute with Calkins and Easton: Judge Underwood and Judge Sebesta. She also sued Judge Sebesta's surety, Fidelity and Deposit Company of Maryland. The judges filed a motion to dismiss James's claims based on the doctrines of judicial and sovereign immunity. Fidelity also filed a motion to dismiss based on its defenses that James lacked standing and capacity to sue and that the statute James relied on as an exception to judicial immunity did not apply. The trial court granted the motions to dismiss.

Michael Easton and James's brother, Calkins, intervened in the suit after the judges were dismissed but before Fidelity's dismissal. They requested sanctions against James and her attorneys. After all defendants had been dismissed, Easton and James filed a notice of non-suit, allowing the judgment to become final.

James timely appealed the trial court's rulings granting dismissal of James's claims against all defendants. She asserts that the trial court erred in four regards: (1) denying James's special exception to the judges' and Fidelity's motions to dismiss; (2) granting dismissal to the judges on the theory of judicial immunity; (3) failing to permit a claim against Judge Sebesta to the extent of the judge's surety bond; and (4) granting dismissal to Fidelity on the theories of lack of standing and lack of capacity.

We affirm.

**Background**

The underlying facts have been detailed in earlier appellate opinions;[3] therefore, only those facts necessary for the resolution of the issues currently before the Court will be included here.[4]

James initiated proceedings to have a guardian appointed for her mother in 2008. Calkins fought the appointment. Easton, alleged to be the legal assistant of the attorney representing Calkins, intervened "pro se." Both Calkins and Easton sought 708*708 to recuse the judge assigned to the probate case, Judge Mike Wood. Regional Presiding Judge Olen Underwood assigned judges to hear that and subsequent recusal motions filed by Calkins and Easton. Easton challenged — on procedural grounds — the orders denying recusal and, eventually, Judge Underwood issued an order granting recusal of Judge Wood. Subsequently, eight judges were assigned the probate matter, each of whom either were recused or informed Judge Underwood that they were "withdrawing or resigning from the cases." Judge Sebesta was the ninth judge assigned to the probate case. Fidelity and Deposit Company of Maryland is the surety for Judge Sebesta.

Judge Sebesta entered an order voiding prior orders, including the appointment of a temporary guardian over James's mother, based on a lack of in personam jurisdiction over the proposed ward, whom James had not properly served. James filed motions seeking to require Calkins and Easton to answer discovery in the probate matter, to dismiss Easton and Calkins's opposition to appointment of a guardian, and to require an accounting of funds removed from her mother's estate.

James filed suit against Judge Underwood and Judge Sebesta, alleging "constitutional due process violations." She included Fidelity in her suit, as surety for Judge Sebesta. James's petition asserts that she has sued in dual capacities: individually and as next friend of her mother.

All defendants answered and filed motions to dismiss. The judges' motion to dismiss was granted. Less than one month later, Easton and Calkins intervened in the case, requesting sanctions against James and her attorneys. A couple of months later, the trial court granted Fidelity's motion to dismiss. Easton and Calkins nonsuited their intervention. James appealed the dismissal of her claims against Judge Underwood, Judge Sebesta, and Fidelity.

**Subject Matter Jurisdiction**

**A. Standard of Review**

Subject-matter jurisdiction is essential for a court to have the authority to resolve a case.*See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638-39 (Tex.1999); *Mann v. Gabriel,*No. 11-10-00265-CV, 2012 WL 2865811, at *2 (Tex.App.-Eastland July 12, 2012, no pet.) (mem. op.). Whether a trial court has subject-matter jurisdiction is a threshold inquiry that can be addressed by the court sua sponte and at any time. *See In re G.S.G.,*145 S.W.3d 351, 353 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993)); *Mann,* 2012 WL 2865811, at *2. Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855 (Tex.2002).

The determination of whether a trial court has subject-matter jurisdiction begins with the pleadings. *Miranda,* 133 S.W.3d at 226. The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446. We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the pleader's factual

allegations. *See Miranda,* 133 S.W.3d at 226; *City of Fort Worth v. Crockett,* 142 S.W.3d 550, 552 (Tex.App.-Fort Worth 2004, pet. denied). When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable jurisdictional defects, the issue is one of pleading sufficiency and the plaintiff should be afforded the 709*709 opportunity to amend. *See Peek v. Equip. Serv. Co. of San Antonio,* 779 S.W.2d 802, 804-05 (Tex.1989); *Tex. Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9-10 (Tex. 1974). On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend.*See Peek,* 779 S.W.2d at 804-05; *Cnty. of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

## B. Judicial Immunity

In her second issue, James argues that the trial court erred by dismissing her claims against Judges Underwood and Sebesta on the grounds of judicial immunity.

The judges' motion to dismiss alleged both judicial immunity and sovereign immunity. The order granting dismissal did not specify the basis for dismissal. If dismissal was proper under either theory, the trial court's judgment will be affirmed. *See Guar. Cnty. Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986); *In re Estate of Hutchins,* 391 S.W.3d 578, 585 (Tex. App.-Dallas 2012, no pet.) Because we conclude that dismissal based on judicial immunity was proper, we do not reach the issue of sovereign immunity.

Immunity from suit deprives a trial court of subject-matter jurisdiction. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex.2006). The Supreme Court has stated repeatedly that "it is a general principle of the highest importance

to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher,* 80 U.S. 335, 347, 13 Wall. 335, 20 L.Ed. 646 (1871); *Mireles v. Waco,* 502 U.S. 9, 10, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991);*Stump v. Sparkman,* 435 U.S. 349, 355, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978);*see also Dallas Cnty. v. Halsey,* 87 S.W.3d 552, 554 (Tex.2002); *Twilligear v. Carrell,*148 S.W.3d 502, 504 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). Thus, judges are afforded immunity from suit for their judicial conduct. *See Mireles,* 502 U.S. at 10, 112 S.Ct. at 287.

Judicial immunity provides immunity from suit, not just from the ultimate assessment of damages. *See id.,* 502 U.S. at 11, 112 S.Ct. at 288; *Halsey,* 87 S.W.3d at 554. Accordingly, allegations of bad faith or malice will not overcome immunity, given that such allegations would require discovery and possibly trial to resolve. *See Mireles,* 502 U.S. at 11, 112 S.Ct. at 288; *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217-18, 18 L.Ed.2d 288 (1967). "Judges enjoy absolute judicial immunity from liability for judicial acts, no matter how erroneous the act or how evil the motive, unless the act is performed in the clear absence of all jurisdiction." *Alpert v. Gerstner,* 232 S.W.3d 117, 127 (Tex. App.-Houston [1st Dist.] 2006, pet. denied) (quoting *City of Houston v. W. Capital Fin. Servs. Corp.,* 961 S.W.2d 687, 689 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.)).

There are two sets of circumstances in which immunity is overcome. First, a judge is not immune from liability for nonjudicial actions, described as actions not taken in the judge's judicial capacity. *See Mireles,* 502 U.S. at 11, 112 S.Ct. at 288; *Twilligear,* 148 S.W.3d at 504. Second, a judge is not immune from actions,

even those judicial in nature, if taken in the "complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12, 112 S.Ct. at 288.

## 1. Judicial versus nonjudicial acts

710*710 The factors we consider in determining whether a judge's act is "judicial" are whether (1) the act complained of is one normally performed by a judge, (2) the act occurred in the courtroom or an appropriate adjunct such as the judge's chambers, (3) the controversy centered around a case pending before the judge, and (4) the act arose out of an exchange with the judge in the judge's judicial capacity. *Bradt v. West,* 892 S.W.2d 56, 67 (Tex. App.-Houston [1st Dist.] 1994, writ denied); *see also Malina v. Gonzales,* 994 F.2d 1121, 1124 (5th Cir.1993). These factors are broadly construed in favor of immunity. *Bradt,* 892 S.W.2d at 67. Not all factors must be met for immunity to exist. *Id.* In some circumstances, immunity may exist even if only one factor is met. *Id.*(citing *Adams v. McIlhany,* 764 F.2d 294, 297 n. 2 (5th Cir.1985)). The factors are not required to be given equal weight; rather, they are weighted according to the facts of the particular case. *Bradt,* 892 S.W.2d at 67.

In considering whether the act complained of is one normally performed by a judge, we ask whether the action is a "function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."*Mireles,* 502 U.S. at 11, 112 S.Ct. 288; *Twilligear,* 148 S.W.3d at 504. The relevant inquiry is the "nature" and "function" of the act, not the "act itself." *Mireles,* 502 U.S. at 13, 112 S.Ct. at 288; *Stump,* 435 U.S. at 362, 98 S.Ct. at 1107. This distinction is necessary, otherwise any act characterized as improper would be deemed nonjudicial because "an improper or erroneous act cannot be said to be normally performed by a judge." *Mireles,* 502 U.S. at 12, 112 S.Ct. at 288 (concluding that judge claiming judicial immunity performed judicial act when

he directed police to bring counsel in pending case before court, even though plaintiff alleged that judge instructed police to use excessive force which would be outside his authority to do).

In *Twilligear,* our sister court concluded that a judge accused of "negligence and gross negligence in failing to adequately oversee expenditures from a guardianship account" was exercising judicial action because "the actions required of probate judges under section 671 of the Probate Code are directly related to conducting the guardianship proceedings pending in their courts ... [and thus are] protected by judicial immunity."*Twilligear,* 148 S.W.3d at 505. Thus, if the nature of the action taken by the judge or the function he performed through that action is one "normally performed by a judge" and the complaining party "dealt with the judge in his judicial capacity," then the act is considered judicial. *See Mireles,* 502 U.S. at 11-12, 112 S.Ct. at 288; *Twilligear,* 148 S.W.3d at 504.

James's petition contends that Judge Underwood was required to sever a claim in intervention brought by Easton against Judge Wood, who was presiding over the underlying probate matter at that time. Judge Underwood's refusal to effectuate that severance forms the basis of James's contention that Judge Sebesta had no jurisdiction to subsequently preside over the probate matter. James's specific contention is that Judge Sebesta "continue[d] to ignore the fact that he ha[d] no jurisdiction because [Judge] Underwood never had jurisdiction to appoint [Judge] Sebesta to preside over the subject guardianship and trust cases because [the intervention] was statutorily severed." She further complains of Judge Underwood's "wrongful recusal of the originally assigned Judge Mike Wood" and appointment of a replacement, contending that a regional presiding judge may not grant a 711*711 motion to recuse that has already been denied by another judge assigned the motion.

We apply the *Bradt* factors to determine whether these actions are judicial or nonjudicial, noting that nonjudicial acts are outside the protection of judicial immunity. First, the act of ruling on motions to recuse and replacing a disqualified judge with a replacement judge are actions normally taken by a presiding judge. TEX. GOV'T CODE ANN. §§ 25.002201, 25.00255 (West Supp. 2013) (detailing method for recusal and assignment of replacement judge in statutory probate courts). Additionally, the act of presiding over a probate matter is an action normally taken by a probate judge. TEX. GOV'T CODE ANN. § 25.0026 (West 2004) (discussing statutory probate court judges' powers and duties). Thus, the first factor supports the conclusion that the actions on which James complains were judicial.

James's characterization of these acts as neglectful, or even malicious, does not convert them to nonjudicial acts. *See Mireles,* 502 U.S. at 11, 112 S.Ct. at 288 (instructing that proper analysis is whether action is "function normally performed by a judge," not whether specific action taken was permitted and without regard to judge's intent);*Pierson,* 386 U.S. at 554, 87 S.Ct. at 1218 ("It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.")

The two judges' actions occurred in court; therefore, the second factor also supports a finding that the judges' actions were judicial in nature. *Bradt,* 892 S.W.2d at 67.

The third factor is whether the controversy centered around a case pending before the judge. The underlying probate matter was initiated by James and assigned to a

large number of probate judges. The rulings that James contends were erroneous and led to this suit against the judges all occurred while the probate matter was pending in the probate courts. Accordingly, this factor supports the conclusion that the judges' actions were judicial. *See id.* To the extent James contends that the judges were not the proper judicial actors to issue a ruling in her mother's probate matter due to procedural errors, that argument does not make the actions less judicial. *See id.* at 68 (holding that judge had jurisdiction, for judicial immunity purposes, to sign an order even if that order would be determined void due to pending motion to recuse judge).

The final factor is whether the act arose out of an exchange with the judge in the judge's judicial capacity. While James disputes that the judges should have been the ones to issue ruling in the case, the parties appeared before the judges and interacted with them in the judges' judicial capacity and not in any alternative capacity. The judges received motions and evidence and issued rulings on those motions. They acted in a judicial capacity in doing so, whether their rulings were correct or not. *See Mireles,* 502 U.S. at 13, 112 S.Ct. at 288. Accordingly, this last factor supports the conclusion that the judges' actions were judicial. *Bradt,* 892 S.W.2d at 67.

Having concluded that the judges' acts were judicial in nature, we next consider whether the judges acted in a "complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12, 112 S.Ct. at 288; *Bradt,* 892 S.W.2d at 68.

712*712 **2. Complete absence of all jurisdiction**

To overcome judicial immunity, the act must be either nonjudicial, as discussed above, or have occurred in a complete absence of all jurisdiction. *Bradt,* 892 S.W.2d at 67. In*Bradt,* a litigant sued a state district judge, arguing that judicial immunity

did not attach because there was a recusal motion pending against the judge at the time. This court rejected the argument, noting that the term "jurisdiction" has a different meaning in the judicial-immunity context. *Id.* at 67-68. "Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Id.* at 68 (quoting*Malina,* 994 F.2d at 1125); *accord Harris v. Deveaux,* 780 F.2d 911, 916 (11th Cir.1986)(holding that judge acts in "clear absence of all jurisdiction" only if judge "completely lacks subject matter jurisdiction").

"In determining whether an act was clearly outside a judge's jurisdiction for judicial immunity purposes, the focus is not on whether the judge's specific act was proper or improper, but on whether the judge had the jurisdiction necessary to perform an act of that kind in the case." *Bradt,* 892 S.W.2d at 68; *Mireles,* 502 U.S. at 13, 112 S.Ct. at 288(involving judge alleged to have authorized police to use excessive force in bringing attorney to judge's courtroom and concluding that judge had jurisdiction to secure attorneys' presence before him, even if he did not have legal authority to authorize excessive force; therefore, judge acted within jurisdiction); *Malina,* 994 F.2d at 1124(holding that judge had power to cite for contempt and to sentence; therefore, judge who cited motorist for contempt and sentenced him to jail acted within his jurisdiction for judicial immunity purposes, even though judge improperly stopped motorist himself, privately used officer to unofficially "summon" motorist to court, and charged motorist himself — none of which was permissible); *Holloway v. Walker,* 765 F.2d 517, 523 (5th Cir.1985) (where judge was alleged to have committed many illegal acts from bench, but there was "no question that he was generally empowered to conduct proceedings of the sort he [was] conduct[ing] at the time he allegedly committed illegal acts, acts were within his jurisdiction for judicial immunity purposes).

Probate judges have jurisdiction to preside over probate cases, which is what Judge Sebesta had been doing at the point that his actions became, in James's view, actionable. TEX. GOV'T CODE ANN. § 25.0026. Further, administrative judges, such as Judge Underwood, have the authority to assign matters to judges within their region, rule on motions to recuse, and to effectuate recusal transfers. TEX. GOV'T CODE ANN. §§ 25.002201, 25.00255. Accordingly, both of these judges had jurisdiction to conduct proceedings of the sort that are the basis of James's complaint.

Importantly, immunity is not lost based on an allegation that the action taken had procedural errors, even "grave" ones. *See Bradt,* 892 S.W.2d at 68 (holding that judge had jurisdiction, for judicial immunity purposes, to sign order even if that order would be determined void because motion to recuse judge was pending); *see also Stump v. Sparkman,* 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978).

In *Stump,* a judge was sued based on an allegation that he authorized the sterilization of a 15-year-old girl without affording the child any notice or other procedural due process.*See id.,* 435 U.S. at 353-54, 98 S.Ct. at 1103-04. After the judge 713*713 granted the motion filed by the child's mother, the mother had the sterilization procedure performed all the while assuring the child that she was having her appendix removed. *Id.* After the child reached adulthood and discovered the true nature of the surgery, she sued, arguing that judicial immunity did not apply because the judge's act of approving sterilization without notice or hearing was outside his jurisdiction. *See id.,* 435 U.S. at 360, 98 S.Ct. at 1106. The Supreme Court disagreed, explaining that immunity attaches even if a judge's action in exercising his authority is flawed in substance or procedure. *See id.,* 435 U.S. at 359, 98 S.Ct. at 1106 (stating that erroneous exercise of court's jurisdiction may affect validity of action taken but does not make act any less "judicial"). In support of its conclusion, the Court noted

that the proper ruling if sterilization was improper would have been to deny the motion rather to dismiss it for lack of jurisdiction. *See id.,* 435 U.S. at 359, 98 S.Ct. at 1106; *see also In re J.B.H.,* No. 14-05-00745-CV, 2006 WL 2254130, *2 (Tex.App.-Houston [14th Dist.] Aug. 8, 2006, pet. denied) (mem. op.) (affirming dismissal of claims against judge who had judicial immunity regarding order in guardianship proceedings).

Thus, the question is not whether Judge Underwood acted improperly when he ruled on a motion to recuse or assigned a probate matter to a judge or whether Judge Sebesta acted improperly when he presided over the probate matter assigned to him, allegedly without authority to act. The question is whether they had the necessary jurisdiction to take that type of action, i.e., rule on a motion to recuse or preside over a guardianship matter. They did.

Accordingly, we overrule issue two.

## C. Liability under statutory exception to probate judge's immunity

In her third and fourth issues, James contends that the trial court erred by granting the motion to dismiss filed by Judge Sebesta's surety, Fidelity, because a statutory exception to judicial immunity applies. James argues that, even if Judge Sebesta has broad judicial immunity, his surety can be liable up to the amount of Judge Sebesta's statutory bond through a limited exception to judicial immunity found in the Texas Estates Code. TEX. EST.CODE ANN. § 1201.003 (West 2014) (effective Jan. 1, 2014) (formerly codified as TEX. PROBATE CODE ANN. § 671(d) (West 2003)).

We have already concluded that judicial immunity applies to the types of actions taken by Judges Underwood and Sebesta in this case. James's effort to invoke a statutory exception to broad judicial immunity is an attempt to establish subject

matter jurisdiction. Whether a trial court has subject-matter jurisdiction is a threshold inquiry that can be addressed by the court sua sponte and at any time. *See In re G.S.G.,* 145 S.W.3d 351, 353 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex. 1993)).

To fall within a statutorily-created exception to judicial immunity, a plaintiff must plead facts establishing the applicability of that provision; otherwise, courts have no subject matter jurisdiction over a plaintiff's claims against a judge for judicial acts. *See Miranda,*133 S.W.3d at 226 (determination of whether trial court has subject-matter jurisdiction begins with plaintiff's pleading); *Tex. Ass'n of Bus.,* 852 S.W.2d at 446 (stating that plaintiff has burden to plead facts affirmatively showing that trial court has jurisdiction).

714*714 James argues that section 671 of the Texas Probate Code waives Judge Sebesta's judicial immunity because the express terms of the statute places duties on the probate judge that, if ignored, create liability. *See Twilligear,* 148 S.W.3d at 505 (holding that "judges have no liability for failing to perform their duties under section 671 beyond whatever liability can be found, if any, on their bonds, as expressly provided in that section.") Fidelity's position is that its principal, Judge Sebesta, could not be liable to James under section 671 because those duties are inapplicable given that no guardian was appointed.

Section 1201.003 of the Texas Estates Code, which is former section 671(d) of the Probate Code, states that "[a] judge is liable on the judge's bond to those damaged if damage or loss results to a guardianship or ward because of the gross neglect of the judge to use reasonable diligence *in the performance of the judge's duty under this subchapter.*" TEX. EST.CODE ANN. § 1201.003 (emphasis added). This provision

provides a limited waiver of judicial immunity, allowing recovery for losses directly tied to the judge's duties under the subchapter. Those duties include the use of reasonable diligence to determine whether an appointed guardian is performing the required duties, to at least annually examine the well-being of each ward and the solvency of the appointed guardian's bond, to require new bonds from appointed guardians when necessary, and to request the production of identifying information. *See* TEX. EST.CODE ANN. § 1201.001-004 (West 2014) (formerly TEX. PROB.CODE ANN. § 671(a-e) (West 2003)).

James repeatedly asserts in her pleading that Judge Sebesta had no jurisdiction to manage a guardianship over her mother. "Carolyn maintains that Defendants Underwood and Sebesta have never had jurisdiction to preside over the subject Calkins's guardianship and trust cases and requests [the trial court to] sign and cause to be entered a Declaratory Judgment, that Defendants Underwood and Sebesta never had jurisdiction over the Calkins guardianship and trust cases, that all of Defendants Underwood's and Sebesta's rulings and signed orders therein are void as a matter of law and [award cost and fees]."

The trial court confirmed at the hearing on Fidelity's motion to dismiss that the order appointing a temporary guardian had been declared void, leaving no recognized guardian over James's mother. At that hearing, the trial court asked questions of the attorney ad litem for James's mother, who confirmed that the original order appointing a temporary guardian for James's mother had been voided by Judge Sebesta because the court lacked in personam jurisdiction over the proposed ward and that no judge had appointed a guardian for her following the voiding of the original appointment. No party disputed those assertions. Thus the parties agree that Judge Sebesta did not recognize an existing guardianship over James's mother.

To the extent any individual has a claim for damages arising from a probate judge's neglectful management of a guardianship or a ward, the claim comes within the subject matter jurisdiction of the courts only if those statutory duties have attached. *See* TEX. EST.CODE ANN. § 1201.003 (specifying that liability is limited to neglectful exercise of duties imposed by that subchapter). Without a guardian to manage or with whom to interact to fulfill any statutorily-created duties, Judge Sebesta could not have failed to fulfill the statutory duties. *See Twilligear,* 148 S.W.3d at 505 (holding that probate 715*715judges have no liability for failing to perform their duties beyond whatever liability can be found for violation of duties imposed within section 671).

If a party cannot invoke a statutorily-created exception to judicial immunity, a trial court has no subject matter jurisdiction where judicial immunity would otherwise apply. Accordingly, we conclude that James failed to meet her burden to demonstrate subject matter jurisdiction over her claims against Fidelity. We overrule James's third and fourth issues.

## Special Exceptions

In her first issue, James contends that the trial court erred in denying her special exceptions to the judges' motion to dismiss and to Fidelity's motion to dismiss.

### A. Standard of review

Special exceptions may be used to challenge the sufficiency of a pleading. TEX.R. CIV. P. 91; *Friesenhahn v. Ryan,* 960 S.W.2d 656, 658 (Tex.1998). The purpose of a special exception is to compel the clarification of the opposing party's pleading when that pleading is not sufficiently specific or fails to plead a cause of action. *See Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 635 (Tex.2007). A trial

court has broad discretion in ruling on special exceptions. *See id.* A trial court's ruling will be reversed only if there has been an abuse of discretion. *See Aldous v. Bruss,* 405 S.W.3d 847, 857 (Tex.App.-Houston [14th Dist.] 2013, no pet.). Pleadings are liberally construed, but special exceptions are appropriate when a pleading does not meet the threshold of "fair notice" of the pleader's contentions. *See id.*

James specially excepted to both motions to dismiss. We turn first to the judges' motion.

## B. Special exceptions to judges' motion to dismiss

The judges' motion to dismiss alleges that James is suing them for actions taken in their judicial capacity based on rulings they have made in the underlying probate case, entitling them to judicial and sovereign immunity. Because we have already concluded that judicial immunity applies, making other defensive theories moot, we will limit our analysis of the special exceptions to that particular affirmative defense.

The judges' judicial immunity defense challenges the trial court's subject matter jurisdiction. Whether a court has subject matter jurisdiction is a question of law. *Miranda,* 133 S.W.3d at 226. Whether a plaintiff has met her burden to allege facts that affirmatively demonstrate a trial court's subject matter jurisdiction is also a question of law. *See id.* The burden assigned the judges in raising this defensive matter was simply to give fair notice of their claim of judicial immunity. TEX.R. CIV. P. 45, 91. The judges' motion to dismiss adequately met that burden.

The judges had no burden to allege facts in support of their affirmative defense because judicial immunity is analyzed first by reviewing the facts alleged in the plaintiff's pleading — not the judge's answer or motion. *See Miranda,* 133 S.W.3d

at 226. James may not use the special exceptions procedure to force opposing party judges to marshal evidence in support of their defensive claim; instead, it was James's burden to plead facts to invoke the trial court's subject matter jurisdiction. *See id.* Because the factual allegations contained in James's pleading negate subject matter jurisdiction, we conclude that the trial court did not abuse its discretion by denying James's special exceptions to the assertion 716\*716 of judicial immunity in the judges' motion to dismiss.

## C. Special exceptions to Fidelity's motion to dismiss

Fidelity's motion to dismiss alleged judicial and sovereign immunity of its principal, Judge Sebesta. James filed special exceptions to Fidelity's motion to dismiss, contending that Fidelity could not adopt by reference assertions in Calkins's court filings, noting Calkins's self-designation as a "non-party." *See* TEX.R. CIV. P. 58 (permitting adoption by reference of statements in pleadings). James further argued that Fidelity's assertions contained in its motion to dismiss were conclusory and did not give James fair notice of the basis for dismissal.

Fidelity filed a supplement to its motion to dismiss, arguing that dismissal is appropriate because a surety cannot be liable on a bond issued to cover liability under section 671 of the Probate Code when the plaintiff affirmatively pleads that the probate judge being sued had no jurisdiction. TEX. PROB.CODE ANN. § 671 (West 2003) (repealed and currently codified as TEX. EST.CODE ANN. § 1201.001-.004 (West 2014) (effective Jan. 1, 2014)). The trial court subsequently denied James's special exceptions to Fidelity's motion to dismiss.

As with the judges' motion to dismiss, James has wrongly assigned the burden of proving or disproving jurisdiction to her opposing party. The pleader is required to

allege facts that affirmatively demonstrate the court's jurisdiction to hear a case. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 446. It was not Fidelity's burden to plead specific facts that would disprove subject matter jurisdiction. James, as the plaintiff, had the initial burden of alleging facts and framing legal arguments that would affirmatively demonstrate the trial court's jurisdiction to hear her claims. *Miranda,* 133 S.W.3d at 225-26 (citing *Texas Ass'n of Bus.,* 852 S.W.2d at 446). Unsupported legal conclusions do not suffice. *SeeCreedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envt'l Quality,* 307 S.W.3d 505, 515-16 & nn. 7 & 8 (Tex. App.-Austin 2010, no pet.).

When necessary, we may consider evidence that the parties have submitted to resolve jurisdictional issues, but we need not do so when subject matter jurisdiction is negated by the allegations in the plaintiff's pleading. *See Bland Indep. Sch. Dist.,* 34 S.W.3d at 555 (stating that, when necessary, courts may consider evidence beyond pleadings to decide subject matter jurisdiction); *see also Bacon v. Tex. Historical Comm'n,* 411 S.W.3d 161, 170-71 (Tex.App.-Austin 2013, no pet.) (permitting grant of plea to jurisdiction — when pleadings affirmatively negate jurisdiction — without affording plaintiff opportunity to amend).

Because subject matter jurisdiction was negated through review of James's pleading, the trial court did not need to rely on non-party factual assertions to decide the issue of subject matter jurisdiction. *See Bland Indep. Sch. Dist.,* 34 S.W.3d at 555 (stating that courts may consider evidence beyond pleadings to decide subject matter jurisdiction, if necessary). Further, Fidelity had no burden to produce evidence in support of its defense or to provide James a detailed explanation of how it negated subject matter jurisdiction. Instead, under rule 45, Fidelity's pleading was adequate if it gave James fair notice of its allegation. TEX.R. CIV. P. 45. We conclude that it

did. Accordingly, the trial court did not err in denying James's special exceptions to Fidelity's motion to dismiss.

Having concluded that the trial court did not err in denying James's special exceptions717*717 to the motions to dismiss, we overrule issue one.

**Conclusion**

We affirm the trial court's judgment. We dismiss all pending motions as moot.

[1] *See* Nos. 01-12-00445-CV, 01-11-00731-CV, 01-11-00734-CV, 01-11-00732-CV, 01-11-00733-CV, 14-11-00053-CV, 01-12-00036-CV, 14-10-00471-CV, 01-10-00751-CV, 01-10-00574-CV, 01-10-00413-CV, and 01-09-00623-CV.

[2] *See, e.g., James v. Easton,* 368 S.W.3d 799 (Tex.App.-Houston [14th Dist.] 2012, pet. denied) (James appealed dismissal of temporary injunction suit against Easton in which Easton was alleged to have written emails to James with pointed references to violent movies that insinuating threats of physical harm).

[3] *See, e.g., In re Estate of Calkins,* No. 01-11-00731-CV, 2013 WL 4507923 (Tex.App.-Houston [1st Dist.] Aug. 22, 2013, no pet.).

[4] Many of the factual assertions contained in James's pleadings do not have accompanying, supporting documentation in the record. These omissions may be the result of James pursing a lawsuit about other lawsuits without the records from those cases included in her appeal. As a result, some of the documents discussed in the parties' briefs are not part of the record, including orders issued by the two judges sued by James and by other probate judges. Because we take as true the factual assertions contained in a party's pleading that has been dismissed for lack of

jurisdiction, we provide the factual account offered by James.*Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226, 228 (Tex.2004).